IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW KALMICK | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:25-cv-08893 |
| | ) | |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| CURALEAF, INC. | ) | |
| | ) | |
| Defendant. | ) | Jury Trial Demanded |
| | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT I

NOW COMES Plaintiff Mathew Kalmick ("Plaintiff" or "Kalmick"), by and through his undersigned attorney, and in support of his Response in Opposition to Defendant's Motion to Dismiss Count I of Plaintiff's Complaint, states as follows:

## INTRODUCTION

Defendant Curaleaf, Inc. asks this Court to dismiss Count I of Plaintiff's Complaint, which alleges violations of the Illinois Whistleblower Act, 740 ILCS 174/1 et seq. Curaleaf's motion should be denied.

Kalmick's Complaint alleges that he disclosed violations of state and federal law to the Illinois Department of Agriculture ("IDOA") and was denied a promotion and terminated in retaliation for making those disclosures. These allegations state a claim under Section 15(b) of the Act. The Complaint also alleges that Curaleaf maintained and enforced a policy preventing Kalmick from freely communicating

1

with the IDOA, which independently violates Section 10 of the Act. Curaleaf's motion fails to address the Section 10 claim at all.

Curaleaf raises three arguments in support of its motion: (1) the 2025 amendments to the Act do not apply retroactively; (2) Kalmick's disclosures to the IDOA were part of his job duties and therefore unprotected; and (3) Kalmick only reported internally and did not disclose information to a government agency. All three arguments fail. Kalmick agrees the 2025 amendments do not apply, but those amendments have no bearing on his claim. The Act contains no "job duties exception," and the Seventh Circuit has held that courts will not read limitations into a statute's clear, unambiguous language. Kalmick disclosed violations to the IDOA, a government agency, which is exactly what the Act protects. Finally, Curaleaf enforced an unwritten policy that prevented Kalmick from freely communicating with the IDOA.

For these reasons, Defendant's motion should be denied.

ARGUMENT

## I.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. To survive dismissal, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. All well-pleaded factual allegations are taken as true, and all reasonable inferences are drawn in the plaintiff's favor. *Id.*

## II. THE PRE-2025 VERSION OF THE ILLINOIS WHISTLEBLOWER ACT PROTECTS KALMICK'S DISCLOSURES TO STATE REGULATORS

Section 15(b) of the Illinois Whistleblower Act (as it existed prior to January 1, 2025) provides that "[a]n employer may not take retaliatory action against an employee for disclosing or threatening to disclose information to a government or law enforcement agency information related to an activity, policy, or practice of the employer, where the employee has a good faith belief that the activity, policy, or practice of the employer (i) violates a State or federal law, rule, or regulation or (ii) poses a substantial and specific danger to employees, public health, or safety." 740 ILCS 174/15(b) (West 2020). To establish a claim under this provision, a plaintiff must show: (1) disclosure of information to a government or law enforcement agency, (2) a reasonable belief that the disclosed information revealed a violation of state or federal law, rule, or regulation, and (3) retaliation by the employer due to this disclosure. *Patel v. Cook Cnty. Health & Hosp. Sys.*, No. 1-23-0758, 2024 IL App (1st) 230758-U, ¶ 15 (Ill. App. Ct. 2024). Kalmick's Complaint satisfies each element.

### A. Kalmick Disclosed Suspected Violations of State and Federal Law to a Government Agency.

Kalmick "actively worked to ensure compliance with state and federal health regulations by escalating issues and communicating with IDOA regulators." Dkt. 1, ¶ 51. Further, he "refused to cease communications with regulators and continued

3

reporting conduct he believed violated various state and federal laws, including the Cannabis Regulation and Tax Act (410 ILCS 705), Compassionate Use of Medical Cannabis Program Act (410 ILCS 130), Illinois Pesticide Act (415 ILCS 60), Federal Insecticide, Fungicide and Rodenticide Act (7 USC 136), Occupational Safety and Health Act (29 CFR 1910), and more." *Id.*, ¶ 82.

These communications to the state regulatory agency responsible for overseeing cannabis operations constitute disclosures to a "government or law enforcement agency" under Section 15(b). The Illinois Whistleblower Act broadly protects employees who disclose information to government agencies where the employee has a good faith belief that the information discloses a violation of state or federal law. 740 ILCS 174/15(b) (West 2020). Kalmick reasonably believed, and pleaded, that the conduct he reported to IDOA regulators violated multiple state and federal statutes and regulations governing cannabis cultivation, inventory tracking, pesticide storage, and workplace safety.

### B. The 2025 Amendments Do Not Apply, But Their Existence Does Not Defeat Kalmick's Claim.

Defendant correctly notes that the 2025 amendments to the Illinois Whistleblower Act, which became effective January 1, 2025, do not apply retroactively to Kalmick's claim. *Cohee v. Caterpillar, Inc.*, No. 1:24-cv-01262 (C.D. Ill. Jun. 17, 2025). But this does not help Defendant.

The 2025 amendments expanded the Act's protections to cover internal disclosures to supervisors and other employer representatives. The version of the Act in effect during Kalmick's employment already protected disclosures to government

4

agencies, exactly what Kalmick states he did. It also prohibited employers from enforcing policies that prevented employees from disclosing information to a government agency. The Legislature's decision to expand protection to internal disclosures does not somehow remove protection from external disclosures that were always covered, or allow enforcement of an unlawful policy that was always prohibited by the Act.

In fact, the Illinois legislature's decision to broaden the Act's protections in 2025 reflects a policy judgment that whistleblower protections should be strengthened, not narrowed. The pre-2025 version protected disclosures to government agencies; the post-2025 version protects those disclosures *and more*. Defendant cannot credibly argue that the legislature's expansion of whistleblower protections in 2025 somehow retroactively eliminates protections that existed before.

### III. THE ACT DOES NOT EXCLUDE COMMUNICATIONS MADE AS PART OF JOB DUTIES

Defendant argues that Kalmick's disclosures cannot be protected because they were made as part of his role as Regional Compliance Director. This argument is wrong as a matter of law. The Illinois Appellate Court has held that courts "will not depart from the statute's plain language by reading in exceptions, limitations, or conditions in conflict with the legislature's intent." *Brame v. City of North Chicago*, 955 N.E.2d 1269, 1271 (Ill. App. Ct. 2011). The court emphasized that "had the legislature intended" to include an additional limitation in the Whistleblower Act, "it certainly would have included such a limitation." *Brame*, 955 N.E.2d at 1273.

5

The Illinois Supreme Court has emphasized that courts "will not read [a] limitation suggested by defendant into the clear, unambiguous language of the statute." *Rehfield v. Diocese of Joliet*, 182 N.E.3d 123, 133 (Ill. 2021). The *Rehfield* court noted that "[t]he plain language of the Whistleblower Act does not support" reading in exceptions regarding reporting requirements, stating that "there are no other requirements or exceptions written into the Whistleblower Act" regarding the elements of protected activity. *Id.* While *Rehfield* ultimately applied a constitutional affirmative defense, it affirmed that courts must not depart from the statute's plain language by reading in exceptions or limitations that conflict with legislative intent. *Id.* The Act protects employees who report suspected violations to government agencies, period. It contains no exception for employees whose job includes ensuring compliance with the law.

Defendant relies on *Sweeney v. City of Decatur*, 79 N.E.3d 184 (Ill. App. Ct. 2017), but that case does not support Defendant's "job duties" argument. *Sweeney* held only that an employee who merely told the alleged wrongdoer his actions were improper did not disclose information under the Act. *Id.* at 190. The court emphasized that "disclose" means "to expose to view" or "to make known or public," and that "informing the violator his or her actions are improper does not expose to view or make known the alleged improper activity." *Id.* In other words, *Sweeney* held that telling the wrongdoer directly does not constitute "disclosure" to a government agency.

6

*Sweeney* is inapposite here. Unlike the plaintiff in *Sweeney*, Kalmick did not merely speak to the alleged wrongdoers within Curaleaf. He communicated with the IDOA, a state regulatory agency, and exposed violations to view by making them known to government regulators. This is precisely the kind of disclosure the Act protects. Indeed, the *Sweeney* court acknowledged this in *Brame*. In that case, the court held that "no exceptions apply if a government or law-enforcement agency is also the employer" observing that "it is difficult to perceive that the legislature did not intend the [Whistleblower] Act to protect a police officer from retaliation for reporting the illegal conduct of fellow officers to his superiors in the department." *Brame,* 955 N.E.2d at 1271, 1273. If the Act protects police officers who report misconduct within their own departments, it certainly protects compliance officers who report violations to external state regulators.

The purpose of employing a compliance director is not to enable an employer to violate the law with impunity by designating one person to do the reporting and then firing that person when they report too zealously or refuse to look the other way. Such a reading would eviscerate the Act's protections for the very employees most likely to discover and report violations—those with access to compliance information and direct relationships with regulators. Defendant's proposed "job duties" exception would create perverse incentives and gut the Act's protections. Under Defendant's theory, employers could insulate themselves from whistleblower liability simply by designating certain employees as "compliance officers" and then retaliating against those very employees when they fulfill their compliance obligations by reporting

7

violations to regulators. This would be particularly harmful in highly regulated industries like cannabis cultivation, where compliance with health, safety, and environmental regulations is critical to public welfare.

## IV. CURALEAF'S OBSTRUCTION OF KALMICK'S REPORTING TO REGULATORS VIOLATED SECTION 10

Defendant argues that Kalmick's claim fails because "there is *no* indication that Plaintiff complained to any government official about his belief that Curaleaf was allegedly discouraging and/or obstructing Plaintiff from making disclosures to government officials." Dkt. 14, at 4 (emphasis in original). This argument ignores entirely that Count I alleges a violation of Section 10 of the Illinois Whistleblower Act, which creates an independent cause of action separate from the Section 15(b) retaliation claim. Dkt. 1, ¶¶ 80-81.

Section 10 prohibits employers from "mak[ing], adopt[ing], or enforc[ing] any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency." 740 ILCS 174/10 (West 2020). Defendant's argument, that Kalmick must have reported the obstruction itself to government officials, conflates Section 10 with Section 15(b) and misunderstands the elements of a Section 10 claim.

### A. Section 10 Creates a Separate Cause of Action with Distinct Elements.

Section 10 creates an independent cause of action distinct from Section 15(b)'s retaliation prohibition. *Mercer v. Favorite Healthcare Staffing, Inc.*, No. 22-CV-766, 2023 WL 2450505, at *15 (N.D. Ill. Mar. 10, 2023). Unlike Section 15(b), which

8

requires proof of retaliation for protected disclosures, Section 10 prohibits the employer's conduct of "preventing" disclosures to government agencies. A plaintiff alleging a Section 10 violation need not prove they reported the obstruction itself to a government agency; rather, they must show that the employer made, adopted, or enforced a policy preventing such disclosures. The statute's plain language prohibits "preventing an employee from disclosing information to a government or law enforcement agency[;]" it does not require that the employee report the prevention itself to authorities. 740 ILCS 174/10 (West 2020).

Defendant's reliance on *Sweeney v. City of Decatur*, 79 N.E.3d 184 (Ill. App. Ct. 2017), is misplaced because *Sweeney* addresses Section 15(b) protected activity, not Section 10 violations. *Sweeney* holds that Section 15(b) does not protect an employee who "simply notes the impropriety of conduct with the alleged wrongdoer." *Id.* at 190. That principle is inapplicable here for two reasons. First, Kalmick *did* disclose violations to IDOA; his Section 15(b) claim is based on those external disclosures about substantive violations. Dkt. 1, ¶¶ 23, 41, 51, 62. Second, Kalmick's Section 10 claim is not based on whether he reported to government agencies, it is based on Curaleaf's conduct in interfering with and preventing his communications with IDOA regulators.

### B. Kalmick Adequately Alleged a Section 10 Violation.

In *Mercer*, the court denied a motion to dismiss where a supervisor told an employee "No absolutely not, what happens in Favorite [Healthcare Staffing] stays in Favorite [Healthcare Staffing]" after the employee had emailed government

9

agencies about potential overstaffing issues and was told to "stop communicating with [Illinois Emergency Management Agency]" and report concerns only internally. *Mercer*, 2023 U.S. Dist. LEXIS 40848, at *4-5, *14. The court held that, viewed in context, these facts adequately alleged a "'rule, regulation, or policy preventing[,]' through fear of reprimand, demobilization, and suspension, 'an employee from disclosing information to a government or law enforcement agency.'" *Id.* at *22 (quoting 740 ILCS 174/10). Kalmick's allegations are materially stronger.

Just as in Mercer, where the supervisor's attempt to interfere with communications with government agencies stated a Section 10 claim, Curaleaf's systematic efforts to manage, control, and undermine Kalmick's regulatory relationships constituted an enforced policy preventing full and candid disclosure to the IDOA. Kalmick has adequately alleged that Curaleaf made, adopted, or enforced a policy preventing him from freely disclosing compliance violations to government regulators, in violation of Section 10.

### C. Defendant's Failure to Address Section 10 Is Fatal to Its Motion.

Defendant's entire argument rests on the premise that Kalmick did not report the obstruction itself to government officials. Dkt. 14, at 4. But that argument is legally irrelevant to Kalmick's Section 10 claim, which challenges Curaleaf's conduct in preventing and interfering with his disclosures, not his own reporting obligations. By failing to address the Section 10 allegations or explain why those allegations fail to state a claim, Defendant has not carried its burden on this motion. Count I survives on the Section 10 theory alone, independent of any Section 15(b) analysis.

10

## CONCLUSION

Kalmick has adequately pleaded a claim under the Illinois Whistleblower Act. He disclosed suspected violations of state and federal law to a state government agency, IDOA, and suffered retaliation in the form of a denied promotion and termination. The Act contains no "job duties" exception, and Defendant's attempt to read one into the statute contradicts the Act's plain language and established precedent.

Moreover, Curaleaf's efforts to interfere with and control Kalmick's communications with IDOA regulators independently violated Section 10 of the Act, a claim Defendant has failed to address at all in its motion. The temporal proximity between Kalmick's protected disclosures and his termination, combined with this interference and the pretextual nature of Curaleaf's stated reasons for termination, create a more than plausible inference of retaliation sufficient to survive a motion to dismiss.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss Count I of Plaintiff's Complaint.

Dated: November 10, 2025          Respectfully submitted,

By: /s/Davina R. DiPaolo
Attorney for Plaintiff Matthew Kalmick
Davina R. DiPaolo
ARDC: 6335794
Loftus & Eisenberg, Ltd.
181 W Madison, Suite 4700
Chicago, Illinois 60602
o: (312) 899-6625
c: (312) 772-4811
davina@loftusandeisenberg.com

11

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 10, 2025, she electronically filed the foregoing *PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT I* with the Clerk of Court using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

<u>By: /s/Davina R. DiPaolo</u>
Attorney for Plaintiff Matthew Kalmick
Davina R. DiPaolo
ARDC: 6335794
Loftus & Eisenberg, Ltd.
181 W Madison, Suite 4700
Chicago, Illinois 60602
o: (312) 899-6625
c: (312) 772-4811
davina@loftusandeisenberg.com

12